**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

|                          |   |                        |
|--------------------------|---|------------------------|
| DARRYL SMITH,            | : |                        |
|                          | : | Civil Action           |
| Petitioner,              | : | No. 05-4987 (JLL)      |
|                          | : |                        |
| v.                       | : | **O P I N I O N**      |
|                          | : |                        |
| RONALD CATHEL et al.,    | : |                        |
|                          | : |                        |
| Respondents.             | : |                        |
|                          | : |                        |

**APPEARANCES:**

> DARRYL SMITH, #268166, Petitioner Pro Se
> New Jersey State Prison
> Trenton, New Jersey  08625

> PAULA T. DOW, Essex County Prosecutor
> JOAN E. LOVE, Assistant Prosecutor
> Essex County Courts Building
> Newark, New Jersey  07102
> Attorney for Respondents

**JOSE L. LINARES, District Judge**

Petitioner DARRYL SMITH (hereinafter "Petitioner") serving a thirty years to life sentence imposed by the State of New Jersey for murder and other offenses, filed a Petition (hereinafter "Petition") for a Writ of Habeas Corpus challenging his conviction pursuant to 28 U.S.C. § 2254(a).  Respondents filed an Answer (hereinafter "Answer") seeking dismissal of the Petition on the merits and for failure to state a federal claim.

For the reasons expressed below, the Court dismisses the Petition and declines to issue a certificate of appealability.

## BACKGROUND

Petitioner challenges a judgment of conviction entered in the Superior Court of New Jersey, Essex County, on November 29, 1995, after a jury found him guilty of murder and possession of a weapon without a permit and for an unlawful purpose. See Pet. ¶¶ 2, 4. Petitioner was sentenced to thirty years to life imprisonment with a 30-year period of parole ineligibility. See id. ¶ 3. Petitioner appealed, and on May 29, 1997, the Superior Court of New Jersey, Appellate Division, affirmed his conviction. See id. ¶ 9. The New Jersey Supreme Court denied his petition for certification on September 4, 1997. See id.

Petitioner also filed a pro se petition for post-conviction relief, which the Law Division of the Superior Court of New Jersey denied on October 10, 2003. See id. ¶ 11. The Appellate Division affirmed the denial on June 14, 2005, see State v. Smith, No. A-1748-03T4 (Superior Ct. of N.J., App. Div., June 14, 2005) (hereinafter "Smith, A-1748"), and the New Jersey Supreme Court denied Petitioner's petition for certification on September 29, 2005. See Ans., Ex. Ra11.

In its decision, the Appellate Division summarized Petitioner's criminal case as follows:

> [Petitioner] shot his Hispanic neighbor [(hereinafter "Victim")] following an argument between the two that occurred earlier that day because [Petitioner's] brother had urinated on the [Victim's] porch or in the adjacent alley. [Petitioner's] girlfriend, Rainey, testified that she was an eyewitness to the shooting. Later . . . she

2

>           wrote letters from the jail where she was incarcerated on
>           unrelated charges that suggested that [(1)] she had been
>           threatened by [Petitioner's] sister, and [(2)] that her
>           statements and testimony [against Petitioner] were forced
>           by the police.  The trial court . . . found that Rainey's
>           letters recanting her trial testimony were not credible
>           [but rather induced by Petitioner's sister's threats] and
>           denied [Petitioner's] motion for a new trial based on
>           such recantation.

Smith, A-1748 at 2.

On October 16, 2005, Petitioner executed the instant § 2254 Petition.  The Clerk received it on October 18, 2005, with his affidavit of poverty in support of his application to proceed in forma pauperis.  The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act, and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), which Petitioner declined.

Petitioner raises five grounds (designated by Petitioner as "Points"), which are quoted below:

>           Point One:  The jury instructions on self
>           defense improperly imposed a duty to retreat
>           under the circumstances where [Petitioner] had
>           neither the duty, nor the opportunity to
>           retreat, in violation of [Petitioner's] right
>           to due process of law and a fair trial.
>
>           Point Two: The judge's failure to provide a
>           specific jury instruction on identification
>           deprived [Petitioner] of the right to due
>           process of law and a fair trial.
>
>           Point Three: The judge's failure to instruct
>           the jurors to determine if [Petitioner's] out
>           of court statement was credible deprived
>           [Petitioner] of the right to due process of

law and a fair trial.

Point Four: Petitioner . . . was denied his
constitutional right to the effective
assistance of counsel at trial [because of:]
(a) Counsel's failure to cross-examine [one of
the State numerous witnesses, Petitioner's
girlfriend (hereinafter "Witness")] regarding
a plea bargain and its influence on her
decision to give a statement and affect on her
testimony before the grand jury and at trial;
(b) counsel's failure to present the testimony
of Petitioner; (c) counsel's failure to object
to the self-defense charge . . . ; [and] (d)
counsel's failure to request identification
charge.

Point Five: Petitioner . . . was denied his
constitutional right to the effective
assistance of counsel at appeal [because of:]
(a) appellate counsel's failure to challenge
the state's failure to advise the Grand Jury
that [Victim's] wounds were inflicted by one
hand gun; [and] (b) appellate counsel's
failure to argue the failure of the court to
charge accomplice liability.

Pet., Addendum II.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code grants
federal district courts subject matter jurisdiction to entertain a
claim that a state prisoner is in custody in violation of the
Constitution, laws or treaties of the United States.  Section
2254(a) provides, in pertinent part:

. . . a district court shall entertain an
application for a writ of habeas corpus in
behalf of a person in custody pursuant to the
judgment of a State court only on the ground
that he is in custody in violation of the
Constitution or laws or treaties of the United
States.

4

28 U.S.C. § 2254(a).

A habeas corpus petition must meet "heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254, Rule 2(c)). The petition must "specify all the grounds for relief which are available to the petitioner," and set forth "the facts supporting each of the grounds thus specified." See Rule 2(c) of the Rules Governing Section 2254 Cases.

Significantly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997), cert. denied, 522 U.S. 1136 (1998). A federal district court must dismiss a habeas corpus petition, summarily or otherwise, if it does not assert a constitutional violation. Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989); Rule 4 of the Rules Governing Section 2254 Cases.[1] "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to

---

[1] Rule 4(c) provides: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." The Advisory Committee Notes to Rule 4 emphasize that "'notice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" (citing Aubut v. Maine, 431 F.2d 688, 689 (1st Cir. 1970)).

inquire whether the prisoner preserved his claim before the state courts." <u>Engle v. Isaac,</u> 456 U.S. 107, 120 n.19 (1982). A district court is not permitted to transform a ground asserting a violation of state law into a ground raising a violation of the federal Constitution.[2] Nor may the court consider a federal claim that can be discerned from the facts of the case but is not asserted in the petition as a ground.[3]

A district court must give deference to determinations of state courts. <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir. 2001), <u>cert. denied</u>, 534 U.S. 919 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual

---

[2]

    <u>See</u> <u>also</u> <u>Engle</u>, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights, and § 2254 was inapplicable); <u>Kontakis v. Beyer</u>, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994), <u>cert</u>. <u>denied</u>, 513 U.S. 881 (1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

[3]

    <u>See</u> <u>also</u> <u>Withrow v. Williams</u>, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying <u>Miranda</u>, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the <u>Miranda</u> warnings to be involuntary under due process criteria"); <u>Baker v. Barbo</u>, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, the district court may not consider ground, evident from the facts but not raised in the petition, that counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." <u>Stevens v. Delaware Correctional Center</u>, 295 F.3d 361, 368 (3d Cir. 2002).

Where a federal claim was "adjudicated on the merits" in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*.

28 U.S.C. § 2254(d) (emphasis supplied).[4]

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are

---

[4] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir. 2004) (quoting <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir.2001)). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. <u>Rompilla</u>, 355 F.3d at 247. However, if an examination of a state court opinion reveals that the state court did not decide a federal claim on the merits, the standards of review set out in § 2254(d)(1) do not apply. <u>Id.</u> at 248.

materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a [different] result." <u>Rompilla v. Horn</u>, 355 F.3d 233, 250 (3d Cir. 2004) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; therefore, an application may be incorrect yet still not unreasonable. <u>Id</u>. at 409-10.


**<u>DISCUSSION</u>**

**A.** **<u>Claims Based on Jury Instructions</u>**

In Petitioner's Points One, Two and Three, he argues that the trial court's instructions--or failure to instruct--violated Petitioner's right to due process of law. <u>See</u> Pet., Addendum II at 1-6. The government argues that these grounds involve state law and do not implicate the Constitution and, to the extent that they raise constitutional claims, due process does not require the claimed amplification or reduction of instructions.

The Court agrees with the government's position. A habeas petitioner who challenges state jury instructions must "point to a

federal requirement that jury instructions on the elements of an offense . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it" Id.  Thus, where a habeas petitioner challenges jury instructions given in a state criminal proceeding,

> the only question for [the federal court] is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction . . . , [the federal court] inquire[s] "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And [the court] also bear[s] in mind . . . that [the federal courts] "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).

Therefore, the Due Process Clause is violated only where "the [given] instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997), cert. denied, 522 U.S. 1109 (1998).  Where such a constitutional error has occurred, it is

subject to "harmless error" analysis.  See Neder v. United States, 527 U.S. 1, 8-11 (1999); Smith v. Horn, 120 F.3d at 416-17 (3d Cir. 1997).  "If the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, [only then] the error cannot be deemed harmless." Smith v. Horn, 120 F.3d at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  Consequently, in evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

### 1.  Petitioner's Claim Based on the Instructions Given

In his Point One, Petitioner contends that Due Process should have precluded the trial court from instructing the jury that Petitioner had a duty to retreat since, at the time of shooting, (1) the Victim was armed with "two foot long screw[]driver," (2) Petitioner was an invitee in a fence-enclosed yard where the shooting took place, and (3) Petitioner was acting in self-defense. See Pet., Addendum II at 1-2. This claim is without merit. To be entitled to a "no duty to retreat" charge, the State law requires evidence to support Petitioner's claim that the yard was

10

Petitioner's dwelling.  See N.J.S.A. § 2C:3-4b(2)(b)(i).  The fact that the area was an enclosed yard is of no relevance to the statute.[5]  See State v. Bonano, 59 N.J. 515, 520 (1971); State v. Martinez, 229 N.J. Super. 593, 603-04 (N.J. Super. Ct. App. Div. 1989).  The record unquestionably reveals that the trial judge provided the jury with thorough instruction on self-defense.  See Ans., Ex. 4T71-19 to 75-23.  Thus, the fact that the court did not provide the jury with the instructions regarding the duty to retreat that Petitioner desired – yet was not entitled to under State law – cannot be deemed a violation of Petitioner's due process rights.  See Llanos v. Goord, 2006 U.S. Dist. LEXIS 50440 (S.D.N.Y. July 14, 2006) (making same finding under similar state provision); Duncan v. Fischer, 410 F. Supp. 2d 101 (E.D.N.Y. 2005) (same); Dunlavey v. Court of Common Pleas & Prob. Office, 2003 U.S. Dist. LEXIS 22228 (E.D. Pa. Nov. 26, 2003) (same); Shaut v. Bennet, 289 F. Supp. 2d 354 (W.D.N.Y. 2003) (same); Duren v. Bennett, 275 F. Supp. 2d 374 (E.D.N.Y. 2003).  Further, Petitioner's contention that he was an "invitee" at the yard does not change the result. While it appears that Petitioner wishes for this Court to redefine the term "dwelling" in a manner which would incorporate the yard at issue, the federal mandate of § 2254 does not so provide.  Accord

---

[5]
The "enclosed yard" aspect might be relevant to the "self-defense" part of jury charge.  While it appears that Petitioner conflates the "no duty to retreat" provision with the "self-defense" provision, the State law views them as separate prescripts.  See N.J.S.A. 2C:3-4.

Riddle v. Berghuis, 2003 U.S. Dist. LEXIS 9661 ( E.D. Mich. May 30, 2003) (stating that, because it was a matter of state law and the state appellate courts were the final arbiters of state law questions, petitioner's claim did not entitle him to habeas relief, since under the state law the "castle exception" applied solely to the dwelling and its attached appurtenances, and the evidence established that petitioner was in his yard or driveway, not his house or his garage, at the time of the fatal shooting, he was not entitled to the "castle exception" instruction.).

### 2.   *Petitioner's Claims Based on the Instructions Omitted*

As stated supra, questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review.  See Engle, 456 U.S. 107; Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir. 1991), cert. denied, 502 U.S. 902 (1991).  Hence, a habeas corpus claim can lie only where the jury instruction is "so prejudicial as to amount to a violation of due process." Id.

A failure to instruct is even less likely to give rise to a habeas claim.  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. at 155.  "The significance of the omission of such an instruction [should] be evaluated by comparison with the instructions that were given," id., in order to establish

12

whether the omission was but a harmless error.  See Neder, 527 U.S. at 8-11; Smith, 120 F.3d at 416-17.

### a.  *Specific Identification Instructions*

In his Point Two, Petitioner maintains that the trial court's failure to charge the jury on a specific identification instruction violated Petitioner's due process rights (even though Petitioner did *not* request such instructions).  See Pet., Addendum II at 3.

> Because the shooting occurred at night in an area poorly illuminated by street lights, [Petitioner believes that] all witnesses had some difficulty with observations. . . . [T]he trial court . . . noted that the jury should consider, among other things, the witness' means of obtaining knowledge of the facts; the witness' power of discernment, meaning the witness' judgement, understanding; . . . ability to reason, observe, recollect and relate.

Id. at 3-4.

Petitioner believes that these comments by the trial judge, without specific identification instructions, were equal to "no charge whatsoever . . . on the crucial issue of identification." Id. at 4.  This Court disagrees.  Not only was the identification of Petitioner but a peripheral issue, since Petitioner was duly identified by various witnesses, see Ans., Ex. 2T28-13 to 29-10; 2T31-12 to 17; 2T32-1 to 22; 2T29-13 to 20; 2T34-21 to 35-11; 2T50-10 to 57-10; 2T55-24 to 56-4; 2T30-6 to 12; 2T56-5 to 11; 2T59-14 to 75-5; 2T92-1 to 99-3; 3T48-7 to 49-21, but the instructions given, viewed in their totality, duly alerted the jury to the issue of identification.  It appears that Petitioner, while acknowledging

that the issue of identification was addressed by the trial judge, see Pet. Addendum II at 4, bases his claim on Petitioner's disappointment that the issue was not "hammered down" as much as Petitioner, in retrospect, would desire.  However, Petitioner's post-factum dissatisfaction with the emphases in instructions cannot render the instructions erroneous, moreover "so prejudicial as to amount to a violation of due process," Zettlemoyer, 923 F.2d at 309, since "[w]hen no request for . . . instruction is made, [Petitioner] must show that the failure to give such an instruction sua sponte constitutes an error clearly capable of producing an unjust result," and such showing cannot be made by the sole fact of Petitioner's dissatisfaction.  Mays v. Hendricks, 2006 U.S. Dist. LEXIS 34472, at *21 (D.N.J. Apr. 17, 2006) (internal quotations and citations omitted); Kelly v. Hendricks, 2006 U.S. Dist. LEXIS 3494 (D.N.J. Jan. 27, 2006) (denying habeas relief to petitioner whose claim was based on lack of specific identification instructions).

   b.   *Credibility of Petitioner's Written Statement*

   In his Point Three, Petitioner asserts that his Due Process rights were violated on the basis of the following:

> The trial evidence presented [during Petitioner's criminal trial] included [Petitioner's] written police statement, wherein he described the events leading up to the shooting of [the Victim]. . . . [However,] the only reference to [this] statement [made by the trial judge as part of jury instructions] was . . . : "Of course, there [was] a statement admitted into evidence . . . , that is a written statement which you may consider as evidence in the case."

14

Pet., Addendum II at 5-6.

Since Petitioner's written statement included Petitioner's assertion that the Victim was killed by Petitioner's co-defendant (even though the written statement also contained Petitioner's admission that Petitioner was present during the shooting), it appears that Petitioner became disappointed, in retrospect, with the fact that the trial judge did not supply any additional credibility to Petitioner's written statement in order to emphasize the distinction between the content of Petitioner's assertion that he was not the shooter and other evidence produced during the trial (which suggested that Petitioner was the person who shot the Victim). However, as stated supra, Petitioner's dissatisfaction with the emphases in instructions in no way indicates that the instructions were either erroneous or "so prejudicial as to amount to a violation of due process," Zettlemoyer, 923 F.2d at 309, especially since Petitioner did not request the specific charge. See Mays, 2006 U.S. Dist. LEXIS 34472, at *21.

**B.  Claims Alleging Ineffective Assistance of Counsel**

In his Points Four and Five, Petitioner lists six issues in which he claims he did not receive adequate representation by his trial and appellate attorneys.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his

15

defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  See id.  In other words, Petitioner shall state a claim sufficient enough to rebut the presumption of his counsel's competence by proving that Petitioner's representation was: (a) unreasonable under the prevailing professional norms; and (b) not a sound strategy.  See Kimmelman v. Morrison, 477 U.S. 365 (1986).  Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Strickland, 466 U.S. at 695.

16

Finally, the Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel. Id. at 396. The ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, also applies to a claim that appellate counsel was ineffective. See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

### 1. Claims Against Trial Counsel

Petitioner raises four claims against his trial counsel, namely: (a) failure to cross-examine the State's Witness regarding the Witness' plea bargain; (b) failure to present the testimony of Petitioner; (c) failure to object to the self-defense charge that did not provide for lack of duty to retreat; and (d) failure to request an identification charge. The Court addresses only Petitioner's claims (a) and (b), since Petitioner's claims (c) and (d) do not satisfy the first Strickland prong because the Court has already established that Petitioner was not constitutionally entitled to such instructions, and because New Jersey courts found the instructions proper under the State law. "[T]here is no reason for a court deciding an ineffective assistance claim to . . .

17

address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

     *a.* *Witness' Plea Bargain*

Petitioner maintains that his "trial counsel was clearly deficient for failing to cross-examine [the witness] on how her Hudson County plea bargain . . . may have influenced her decision to give a statement and affected her testimony before [G]rand [J]ury and at trial," since the information about the plea bargain could have affected the Witness' credibility. Pet., Addendum II at 6. However, the Superior Court of New Jersey determined that Petitioner's trial counsel (1) was not apprised before trial that the Witness was given the plea bargain, and (2) even if the attorney would have been so apprised, the attorney could not have used the Witness' plea bargain in order to cast doubt about the Witness' credibility in view of the State law provisions. In rejecting Petitioner post-conviction relief, the trial judge determined that

> there is no evidence that trial counsel was aware of [the Witness'] plea bargain or sentencing. . . . [Moreover, all convictions of the Witness admissible to cast doubt about the witness' credibility] but one occurred *after* [Petitioner's] trial[,] and the [only] one that occurred before [Petitioner's] trial [that is, the one with the plea bargain at issue] was for a disorderly person offense and, therefore, not admissible to attack credibility.

State v. Smith, Indictment No. 3085-9-94 (N.J. Super. Ct., Kenneth S. Levy, J.  Oct. 10, 003).
Ans. at 18.

It is long established that the federal court must determine whether the actions of counsel were outside the wide range of professionally competent assistance in light of the circumstances existing at the time of counsel's action.  _Strickland_, 466 U.S. at 687.  Since the New Jersey courts found that (1) Petitioner's trial counsel was not apprised about the Witness' plea bargain, and (2) the plea bargain was inadmissible to attack the Witness' credibility, Petitioner did not meet his burden of showing that his counsel was ineffective.  _See_ 28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").  Since there is no argument by Petitioner that his trial counsel failed to examine the Witness vigorously with respect to all other matters, _see_ _generally_ Pet., and the trial court expressly acknowledged the counsel's vigorous cross-examination of the Witness, _see_ Ans., Exs. 3T80-21 to 93-5; 3T102-1 to 15, this Court finds that Petitioner's ineffective assistance of counsel claim based of the Witness' plea bargain fails to meet the first prong of the _Strickland_ test, thus dispensing with the second prong of _Strickland_ inquiry.

### b.   _Petitioner's Choice Not to Testify_

Respondents argue that the "record reveals that . . . Petitioner was advised . . . of his right to testify in his own defense [but] elected not to testify and acknowledged his

understanding of his rights," <u>see</u> Ans. (Citing Ex. 4T40-2 to 41-5),

Petitioner nonetheless contends that

> Petitioner's trial attorney was deficient for failing to
> permit [Petitioner] to testify in his own behalf.
> Because of the discrepancy in the testimony between [two
> witnesses for the State], it was critical that
> [P]etitioner testify offering the jury[] his account of
> the events.  The . . . record clearly indicates that
> [Petitioner] wanted to take the stand.

Pet., Addendum II at 8.

This Court, however, finds that the record clearly supports

Respondent's position that Petitioner elected not to testify, such

that his counsel was not deficient. Petitioner's trial transcript,

in pertinent parts, reads as follows:

| | |
|---|---|
| THE COURT: | [Counsel], has there been a decision made whether or not [Petitioner] intends or will take the stand? |
| [DEFENSE COUNSEL]: | He will not, Your Honor. |
| THE COURT: | [Petitioner], I want to make sure that you understand that you do have a right to take the witness stand in your own defense. |
| [PETITIONER]: | I understand that. |
| THE COURT: | [Advising Petitioner of potential positive and negative consequences of taking the stand.] Do you have a full understanding of what I am trying to explain to you? |
| [Petitioner]: | Yes, I understand. |
| THE COURT: | And do you wish not to take the stand in your own defense? |
| [PETITIONER]: | Yes, I wish not to take the stand. |

Ans. Ex. 4T40-2 to 41-5.

While it appears the Petitioner believes, in retrospect, that he might have contributed to his own defense by highlighting what Petitioner deems to be inconsistencies in statements made by certain witnesses, see Pet., Addendum II at 8, Petitioner's conjecture about his ability to enlighten the jury has no relevance to Petitioner's assertion that his trial counsel did not "permit him to testify." Id. Petitioner's Petition suggests that Petitioner's decision not to testify was based on Petitioner's trial counsel's indication that Petitioner's testimony might be injurious to Petitioner's interests in view of Petitioner's prior convictions that, in all likelihood, would have been disclosed to the jury had Petitioner taken the stand. Petitioner, nonetheless, now bemoans his decision not to testify, believing that the risk would have been worth it, see id. ("[Petitioner's] criminal record was not especially egregious"), the fact that Petitioner's counsel offered Petitioner a proper and well-grounded advice about the applicable state law does not--and cannot--mean "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88; State v. Sands, 76 N.J. 127 (1978) (providing for cross-examination of testifying witness with respect to the witness' prior convictions).

### 2. *Claims Against Appellate Counsel*

Petitioner also claims that he "was denied his constitutional right to the effective assistance of counsel on appeal."  Pet., Addendum II at 9.  Petitioner elaborates that his claim is based on his appellate counsel's "failure to challenge the State's failure to advise the Grand Jury that [the Victim's] wounds were inflicted by one hand gun."  Id.  However, "it is a well established principle that counsel decides which issues to pursue on appeal." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).  Therefore, even though Petitioner has developed an opinion that his "appellate challenge [with respect] to the evidence presented to the [G]rand [J]ury clearly would have been successful," Petitioner's appellate counsel was not constitutionally required to raise every claim, even every nonfrivolous claim that Petitioner wished for during the period of appeal or has recently developed.[6]  See Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Smith v. Robbins, 528 U.S. 259, 288 (2000) (clarifying that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal").

Petitioner's second claim is that his "[a]ppellate counsel[] fail[ed] to argue . . . the failure of the Court to charge

_____

[6] Petitioner's Petition does not clarify whether Petitioner actually requested such challenge at the time when Petitioner's appeal was being prepared or if Petitioner is merely disappointed, in hindsight, that Petitioner's appellate counsel did not produce the idea.

22

accomplice liability." Pet., Addendum II at 10. However, there can be no claim of constitutional deprivation based on an attorney's failure to request a charge to which Petitioner had no constitutional right to in the first place, and the omission of which was deemed proper under the State law. See Carpenter v. Vaughn, 296 F.3d 138, 153 (3d Cir. 2002) ("attorney cannot have been ineffective for failing to request an instruction that was [constitutionally] unavailable"); Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987) ("questions concerning [jury] instructions are normally matters of state law and are not cognizable in federal habeas corpus review").

Under these circumstances, Petitioner cannot show that the assistance of his appellate counsel claim was unreasonable under the Strickland test and its progeny. See Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (rejecting state petitioner's § 2254 claim that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance); see also Strickland, 466 U.S. at 697 (since Petitioner's Sixth Amendment challenge based on jury instructions fails the first prong of the Strickland test, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one").

The Court has thoroughly reviewed each of the claims raised in the Petition and determines that habeas relief is not warranted. The Court will therefore dismiss the Petition.

## Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## CONCLUSION

Based on the foregoing, the Court dismisses the Petition for a Writ of Habeas Corpus and denies a certificate of appealability.

 

 

 

 

                        /s/ Jose L. Linares
                        **United States District Judge**

Dated: August 15, 2006